The case today is United States v. Charlie Jinan Chen, Appeal No. 191962. Attorney Carter, please introduce yourself on the record and proceed with your argument. Thank you. May it please the Court, my name is Valerie Carter and I'm arguing today on behalf of the appellant Charlie Jinan Chen. And I would like to ask the Court if I may reserve three minutes for rebuttal. Yes, you may. Thank you. Proceed. Thank you. Your Honor, the vast majority of the trial in this case was devoted to the three insider trading charges asserted against my client, Mr. Chen, in the indictment. By contrast, only a small fraction of the witness testimony... Ms. Carter, believe me, we do know the facts of the case. We've read your briefs. So you're basically asserting a series of errors. The government says none of those errors was preserved. In fact, the government says each of those claims of error was in fact waived and we shouldn't even get into plain error review. So I think you better start with that contention by the government. Thank you, I will. Your Honor, we believe that we have preserved our position starting with the pretrial conference in which we asked for verification from the government that the false statement claim related to the factual contention that Mr. Chen told the FBI agent that he could not remember his trading in Vistaprint. So with that verification, we proceeded to the trial several days later and the government made its opening statement and the vast majority of it was devoted to the insider trading charges. The judge gave the government a two-minute warning and they quickly finished up without even mentioning the false statement claims fact. And then we proceeded to testimony and the first witness testimony was somebody from Vistaprint and that ended the day. Her testimony was not completed. The next morning before the jury was called back in, we raised the issue with the judge that the government did not mention the false statement claim or mention the incorrect false statement claim which was that Mr. Chen denied that he was close friends with the so-called tippers. So we believe that we preserved it at that point and it was clear throughout the trial judge that there was this dichotomy between the two false statements or the lies that the government called them. One was the close friend statement, the other was what we call in our brief the recall statement and there was never any precise definition by the government to the jury about which of those statements formed the basis of count four. And we believe that their obfuscation was a means by which they were able to increase their odds of winning. Usually what you would point to to counter the other government's argument is some particular thing that happened at trial to which defense counsel then lodged an objection that was overruled and you'd be asking us to preserve that preserved error. So far the only thing I've heard you say that you raised with the judge is that the prosecution didn't mention in its opening the statement that was being identified as the lie. Were there any other objections that you raised to the testimony mentioning other alleged misstatements? Did you ever say those shouldn't be admitted or anything like that? Well, in our opinion, the judge was well aware of what we're calling the obfuscation. Let's put to one side mind reading of the judge. I'm trying to focus you in on a specific question to see if you can counter the government's contention of forfeiture here. Is there any objection that you by defense counsel that you would direct us to in the record that is relevant to this appeal? I don't think that the words I object were uttered, but I think that after the opening statement, the colloquy that we engaged in with the judge was tantamount to the objection. As you related, and I might have misunderstood it and I'll go back and read it in full, but as you just related it, it sounded more like a complaint regarding the adequacy of the government's opening argument than it did like a request to the court that certain testimony not be allowed that you're now complaining was allowed. It's not so much the adequacy. Our position from the beginning was that in order for us to prepare an effective defense of Mr. Chen, we needed to know what the factual basis was for the false statement charge, because there was in the pretrial proceedings a confusion by the government. If we didn't know which of the statements they wanted the jury to consider, then it was impossible for us to prepare an effective defense. That sounds like a challenge to the adequacy of the indictment. No, not the adequacy of the indictment, because the indictment specifically said that the recall allegation formed the basis, the one and only basis for the false statement, but they claimed otherwise at trial. If you look at even after the opening, the order of the witnesses, the witness that they put on first from the FBI dealt with the close friends allegation and not the recall allegation whatsoever. I think it's a fair inference to say… Did you object to that testimony and ask that it be stricken? No, I didn't object to that testimony because it was still at the beginning of the trial and we still didn't know where the government was going and whether they would end up telling the jury what count four related to. Why didn't you just assume that it was as in the indictment? That's what they were alleging. You said that was clear and therefore be happy when they put in evidence on other stuff because that wouldn't support the claim before the jury and then file a Rule 29 motion and be done with it. The jury never had the indictment, so they never saw the fact that formed the basis of count four. The judge did not tell them the recall allegation or read or summarize the indictment. You can probably anticipate my question response to that. Did you ask the judge to instruct the jury that the only alleged lie was X and they had to find that that was a lie and finding other things wouldn't be sufficient on that count? I did not, Your Honor, and the reason for that also is that the burden I believe here should be on the government to not mislead the jury and I think that's exactly what happened. Is it correct that you agreed to the instructions as written? Yes, we did. And one of the reasons for that is that if you notice in the insider trading instructions, they were all consistently relating to the facts. So the judge would identify the facts like the date of the trades, what the amount of the profit was, and then she would give the instruction. But when it came to, and we assumed that when she got to the false statement count that she would do the exact same thing, that the pattern would be consistent. And when she got to the false statement charge, she simply read the elements of the false statement charge and did not indicate to the jury what the facts were. But when she gave the instruction and before the jury retired to deliberate, did you interpose an objection to that or ask for clarifying instruction? We did not. And if where you're going with this is that you should decide the case under a clear error standard of review, then I think we meet that standard also. And the reason we meet that standard is that there was so much confusion and so little mention of the recall allegation and the false statement claim in the trial that the jury could have convicted on the friend statement for which there was an awful lot of testimony. And that we believe you don't know whether the jury convicted on the actual indictment. And that's why I think even under a clear error review, as rare as it may be, we meet that standard also. And then one other thing, the government says that the other testimony about other misleading statements, they were all relevant to the other count, to the insider trading count. Do you dispute that? There was only one other misleading statement that they pointed to, and that was whether Mr. Chen denied to the FBI agent that he was a close friend of the tippers. Isn't that relevant to the insider trading claim? It may have been relevant to the insider trading claim, but you can't rule out that it wasn't the false statement claim either. Thank you. Thank you. All right, Ms. Carter, I believe you have reserved some time. We will hear from Mr. Lockhart now. Thank you. Thank you, Attorney Carter. If you would mute your device at this time. Attorney Lockhart, if you would introduce yourself back onto the record. Yes, good morning. Donald Lockhart for the government, and may it please the court. So on the question of waiver, the very place in the record that the defense points to as preserving the issue is actually the first place in the record where we would contend there was a waiver. So on the second day of trial, the defense attorney noted that in our opening statement the prior day, we hadn't gotten to a description of the false statement underlying count four. We responded at that time that we had simply run out of time, and the record of course supports that construction. The defense then responded that with that clarification, this is on page 365 of the joint appendix, with that clarification, we're fine. Like I said, I just heard them say yesterday in the closing, meaning opening, I recognize that the government ran out of time and that the misstatement was about the friendship. So as long as we know how to argue the case, I'm fine. So that was the defense position concerning our opening statement, and then we go on from there to point out a series of other waivers that occurred both with respect to the jury instructions, not sending the indictment back to the jury, the verdict form, the failure to argue variance, etc. But I want to focus on substance, and if you are reviewing for plain error, from our standpoint, the key prong here, the most lethal prong, is prong three. The defense has to show that there is a reasonable probability that the jury in this case returned its verdict on count four based on a statement other than the one alleged in that count. They haven't even tried to meet that burden, either in the opening brief, of course there's been no reply brief, and again at oral argument, just no attempt whatsoever to meet that prong three burden. We would submit that three categories of record evidence bear on that third prong. The first is that if you look at the examinations of Special Agent Keelan of the FBI, the one who testified about the false statements, what you see is an extremely intense focus, particularly in the government's redirect and in the defense recross, on just the statement underlying count four. If you look at page 17 of our brief, we actually quote the redirect of the government and the recross of the defense, and you'll see that every single question was directed at that false statement, the one underlying count four. That's category one. Category two is the fact that the arguments also focused on the count four false statement, and in particular, the defense attorney right at the end of the defense closing argument said to the jury, and this is at page 769 of the joint appendix, don't find beyond a reasonable doubt that because he didn't specifically recall the Vista print trades, recall meaning memory, that he's trying to lie to the FBI. Use your common sense on that one, and just after that, the defense rests. We would contend that by focusing the jury on the reasonable doubt standard in connection with that very count four false statement, the defense is zeroing the jury in on it, makes it less likely that the jury would have relied on some other false statement in convicting the defendant. Finally, the third category of record evidence we point to is that in the preliminary instructions, in the final instructions, and in the special verdict form, the judge consistently referred to false statement in the singular. We don't have a situation where it's likely that the jury simply convicted Chen on the basis that he was somehow a serial liar, and also it's the case that the count four statement is a more discreet freestanding false statement, a singular false statement, unlike what we refer to as the relationship minimizing remarks, which really consist of a series of assertions in which the defendant attempted to distance himself from the Vista print executive's family. That, in a nutshell, is our position. If the court has no further questions, we're happy to rest on our brief. Thank you, Mr. Lockhart. Thank you, Mr. Lockhart. You can mute your device at this time. Attorney Carter, if you would unmute your device, audio and video and reintroduce yourself on the record. Thank you. I'm Valerie Carter for the appellant Charlie Jinan Chen, and I would like to address Mr. Lockhart, sorry, the government's three areas where he thinks that we have waived or we haven't met the clear error. The first is that he argued just now that every question that we asked of Agent Keelan was directed to the recall statement, and he uses that as a means by which to say that we were the ones who informed the jury what the basis of the false statement was. I don't think that is an accurate interpretation of what our questions were, and he said that we focused in on the closing on the recall statement. He can't have it both ways. If all of our questions to the agent were on the recall statement, then mentioning it in the closing doesn't necessarily preclude that the friendship statement wasn't part of count four. In the jury instructions, the judge inconsistently referred to the false statement in the singular and in the plural, and that highlights part of the problem of the case altogether because if the government had just told the jury in the closing that Charlie told many lies, and then the judge indicates that in the plural at one point that there were lies, plural, then the confusion is carried all the way through. There is, in our opinion, a reasonable probability that the government or that the jury convicted on the friend statement as opposed to the recall statement, and it was done because of the confusion throughout the trial. Thank you. Thank you very much. That concludes the argument in this case. Attorney Carter and Attorney Lockhart, you should disconnect from the hearing at this time.